Case number 22-7044, Alton & Southern Railway Company et al. v. Brotherhood of Maintenance of Way Employees Division slash IDT et al. Mr. Edelman for the et al. Mr. Munroe for the at-lease. Good morning Mr. Edelman. Judge Henderson is participating remotely and just for purposes of running the argument today I am presiding even though she is the presiding. Thank you very much. Good morning, your honors. Good morning, Judge Henderson. I'm Richard Edelman. I'm counsel for the Brotherhood of Maintenance Way Employees Division IBT. I'm going to start by answering the question the court posed yesterday about whether there's still a live case or controversy in light of Public Law 117-216. We submit there still is a live controversy with respect to the carrier's claim for declaratory judgment. The union's claim for declaratory judgments in the transferred complaints in this case and the union's counter claim declaratory judgment against the Soo Line and Delaware-Hudson Railway. We rely on the decision of the United States Supreme Court in Burlington Northern v. BMWE 4E1 U.S. 429. They are in a unanimous decision in a similar situation. The court held that a dispute arising out of a rail industry bargaining involving the BMWE in fact that was resolved after a presidential emergency board after a congressional enactment was not moved because the issue was capable of repetition yet evading review. In 1986, after an impasse in bargaining between the BMWE and the main central railroad, BMWED went on strike and later extended the strike to other carriers. While the legality the secondary activity was being litigated before the Supreme Court could rule the president appointed an emergency board that recommended a resolution and ultimately Congress adopted a resolution ending the dispute. The Supreme Court said that because the same parties are likely to find themselves in litigation again over the issues before the court and because such disputes are typically resolved by executive and legislative action. The controversy was one that could be was capable of repetition yet evading review and that discussion is at 41 U.S. 436 footnote 4. Based on that decision we submit the court and grant relief in the form of declaratory judgment on one one or more of the parties here and with respect to the Sioux line not injunctive relief and with respect to the Sioux line in Delaware and Hudson the parties are still in bargaining over wages the bargaining round it's not over for them but we think that BM versus BMWE is dispositive of the case of controversy question posed by the court and since I have limited time unless the court has other questions I'll proceed to the merits. Thank you counsel. The MW here has challenged the continuing validity of the Atlantic coastline approach to determining whether when national bargaining is required under the Railway Labor Act. But isn't that Atlantic coastline case undisputed precedent? Yes and we recognize that this panel cannot overturn certain precedent and we are urging the panel to recommend en banc reconsideration coastline. I understand what I'm asking the court to do if I'm just going to briefly emphasize the points I think ought to be considered whether members of the panel would recommend en banc then I'll move on to the counterclaim. We think the Atlantic coastline test was developed as an objective flexible practical test that has applied over the years we believe it now requires unions to bargain nationally but if the carriers want to bargain nationally the union has to bargain nationally if the carriers are free to bargain nationally or not as they choose. There are two components to the test the appropriateness of the issue for national bargaining component we think has become meaningless because of a germane misproviso that has been added in national handling which would be under Atlantic coastline but it can potentially become part of the give and take of bargaining over an issue that the railroads want to bargain nationally then that issue which is otherwise inappropriate for national bargaining is required to be bargained nationally based on the carrier's preference so the proviso we think overwhelms the test. The other component of the test is the history of bargaining component has become rigid and really separated from the original consideration in Atlantic coastline which is we look at the history to see will one form of bargaining with the other be productive in producing itself but prior participation national bargaining has become a rigid factor and effectively determines the outcome and perpetually binds a party to national bargaining because of the choice that happened years ago. Okay in that vein did BMWD voluntarily participate in national bargaining I mean there were several years 1999, 2004, 2009, and 2014. Sure well we were ordered by Judge Hogan in Hill and Southern case to engage in national handling and so we did in the subsequent rounds and we tried and we felt it wasn't being productive on the issues that we wanted to bargain because we were locked into national bargaining so yes we participated but we were compelled. Well you were compelled that case was in the 90s if I remember. It was yes it was based on a finding of prior practice before proceeding that case yes that's correct but it wasn't just that you did so because you were compelled to do so by Judge Hogan he applying our precedent said well you know there is also this history of bargaining in this fashion. All right now I think two two elements one is as you may know the railroads have argued we're still bound by that in fact they asserted that we were rescued blocked by res judicata because of that decision that we were still essentially compelled so that's what we dealt with until we got to this round of bargaining and we sought to do it we thought it was appropriate after all this time to make an argument to the court that the Atlanta coastline test ought to be reconsidered. But Judge Hogan didn't agree with that res judicata. He did not he did not. Now I'll last thing I'll sort of say on this point and then move on to the counterclaim is to address one of the main points the carriers have made which is that they think that there is not a problem here because the carriers are exercising their right under section two third to join a coalition or not we don't think that difference is a meaningful difference but in any event the carriers are not merely forcing the union to bargain against the coalition they are forcing us to engage in national bargaining because theirs is a national coalition requiring us to bargain against their national coalition is not only determining who sits across the table but the nature of bargaining and and the two cannot be separated we submit and this was recognized by the eighth and the sixth circuits and we so we feel that that distinction they're making is not a meaningful difference. But in Burlington this court distinguished between issues with respect to your scope of bargaining as well as related to the designation of representatives what would you say is kind of the controlling issue here? Well I would say the difference is we're being forced into national bargaining and I think we would say that we are that that's the difference and in the Burlington case the panel said we're bound by that precedent and so that's why we're and as old as it may be we're bound by it. I understand that again I respect the limitations I'm asking for the other consideration. If I may under but let's say but if we're going to apply land coastline we think it was error for the district court to dismiss our counterclaim against the Hudson. They opt to engage in national handling for health and welfare that's participating in compelling BMWE to engage in national bargaining but they then refuse to participate in national bargaining over wages. In a recent rounds of bargaining there have been explicit trade-offs between wages and health and welfare cost sharing. Those who rather want the benefits of employee increased contributions in health and welfare but they don't want to pay the wages that come out in the national table. We submit a BMWE is obligated to engage in national handling generally there's no principle basis for suing D.N.H. to avoid national handling on wages while requiring the union to bargain nationally. Now the district court said nothing in the Railway Labor Act or Atlanta coastline prohibits partial participation in national handling but neither the court nor the carrier cited any authority that says permissible compel a party to participate in national bargaining while only partially participating in national bargaining. And the other point here I'm going to make and the district court said well look health and welfare issues are an appropriate issue under Atlanta coastline for national bargaining because it's a national health and welfare plan. But that was the argument that the unions made in the Arasa Sioux case that the eighth circuit rejected as a matter of fact I argued that case. So we think that that's not a valid basis for that decision. But that's a couple of questions one is you started off earlier about perhaps this being en banc review so tell me how you feel the court deals with that procedure at this juncture or do we rule and then you request reconsideration depending on how the case comes before en banc review. Yeah well so I think you're gonna we have to rule with the Atlanta coastline in mind I believe that the panel can recommend to other judges in this court to hear this case en banc or we petition if we get the decision and there isn't such a recommendation we would petition. And then the next thing I would ask is what would you you know in our view we think that it's it's in six circuits are right that the parties have a right to bargain nationally or not and we think and that's if I'm made the the distinction being made that well that then overwhelms the other side's right to designate a representative for because you know it's a national Atlanta coastline right there's an either or scenario but here's the thing you can participate in national bargaining and not be forced as your choice is represented for example the Sioux line and the Delaware and Hudson they don't need to designate the National Carriers Conference Committee as their representative they can but they can sit at the national bargaining table and represent themselves so we're not dictating who their representative is for bargaining we're talking about the form of bargaining and the subject matter are we bargaining over the individual agreement or regarding over industry-wide issues so in our view we think the eighth circuit and the sixth circuit approach is correct. Would there need to be more than one particular carrier suggesting local bargaining you know with respect to the issues or the parties as opposed to I'm just thinking about resources and kind of what we would term as judicial economy if you just allowed on every issue the particular carrier to come forward and say well we believe this is a local issue not a national issue? Well those resources would be the resources of the parties of course in that in that you know whether a carrier or a union is participating in a coalition or not they still show up and they're still going to have input and they're going to say I don't you know I don't agree with this concession or I don't think we want to make that proposal whether they're doing that by themselves or otherwise but frankly I don't think that that resource issue will overcome the what we submit or the statutory right of the parties to bargain in the manner in which they choose to bargain. Thank you Judge Henderson do you have any questions? No questions thank you Judge. All right we'll give you some time on rebut. Thank you.  Good morning your honors. I'd like to begin if I may with the same place that my friend Mr. Edelman began on the question of mootness. We agree in part with the appellants with respect to the question of mootness. We just come at it that the conclusion is the same. We agree that the case is not moot and the panel can issue a substantive decision on the merits. We come at it slightly differently. The way I would analyze the question is with respect to the issues and requests for relief presented in the compliance. As you heard from Mr. Edelman there are really sort of two aspects of this case. There's the two-third question and then there's the Atlantic coastline the two-third question is not moot because that is a persistent question. It continues to affect the relationship bargaining relationship for the parties not just in the round that just ended with congressional position but going forward. It has a material impact on the relationship from this point and so if I file the complaint tomorrow it would be a case on that issue. With respect to the application of coastline I believe that issue is moot because it is a fact and round specific inquiry and there's no relief that the court could grant at this point meaningful to either side with respect to that. So what we would suggest is that the court issue a decision disposing of the two-third question which we've already addressed in the committee and then a dismissing deal on coastline. I do agree with Mr. Edelman that in the event that the court does not agree with that analysis there is a plausible argument to be made on capable repetition yet evading review. I would note that this case was dismissed not this case but the preceding case the Alton 1 case was dismissed by this court on mootness grounds in 1997 I believe it was and so if the court did so again you would have a scenario where the same issue with the same parties and before this court two times and it's been dismissed for mootness both times. That seems to me to be a perfect example of something that's capable of repetition that is repeating and yet evading. Unless there are any questions on that I can now turn to the merits. Thank you counsel. With respect to the merits questions if the court does not dispose of anything on mootness I'd suggest this is a very straight for this panel. You've heard from my friend that they agree make case under the coastline standard in the district court. This record contains evidence that is exclusively favoring the character both with respect to the primary claim and with respect to the counterclaim. It's undisputed. So you know they said well we did present this under the coastline respect to the counter. You heard Mr. Edelman refer to their argument that they could under that that issue. But if you look at what they actually argued in the district court and the evidence in the record what you'll find is that their argument turns on this contention regarding section two third. The other issue is they're pointing to the sixth and eighth circuit decisions and saying it's not fair that a carrier like Sue Line gets to choose whether to engage in national campaign. It's the phrase that Mr. Edelman repeatedly uses both in his brief and today. And a union does not get to choose whether to join national campaign. That is not an accurate depiction of how this works as a practice. There is no circuit split. There is no inconsistency because as we've explained section two third merely provides that both sides railroads and they don't it doesn't say anything about whether they have to play against it. So you can't be forced to play for a coalition but you can't be forced to bargain on both sides. The union's argument to the contrary depends on this semantic trick. They keep saying it's about joining national handling. We have to join national handling but the railroads don't have to join national handling. What does that mean? National handling as both sides have been using it in this case is industry jargon for multi-employer because that's been the historical practice. So when you say join national handling it means two different things depending on whether you're a railroad or a union. If you're a railroad and you have to join national handling you are surrendering your bargaining autonomy to the group. You are going to be stuck with whatever terms are negotiated for the entire unit. So when he says Sue Line can sit at the table and negotiate for itself nobody can't. The whole point of national handling is they're going to get the same provisions as everybody else. If you're a union joining national handling just means you're sitting across the table from a coalition instead of a single railroad. You don't surrender your autonomy. You don't have to make any concessions in your bargaining strategy. You don't have to modify your priorities to accommodate the rest of the group. There is zero impact on representation. None. That's why this work rejected reliance on section two third and general committee and maintenance away says well that case is distinguished because it was the union there wasn't trying to bargain at the level of representation but this court wasn't addressing that question. That's the crap why a system-wide bargaining was not addressed. This court was talking about national versus local handling when it said quote section two third is not the governing provision. I don't know how this work could have been more clear but more importantly the purposes of counsel's argument even the other courts the other circuit courts that have addressed this issue support our view. The Sue Lyon case says both railroads and unions have the right to decide whether to join a coalition. Very expressive. That's why it said Sue Lyon can't be forced. It has the choice just like a union has a choice whether to join a coalition. It then goes on to say this is a 891 F second 679 if the unions select a single representative that representative may lawfully insist that the same contract terms be applied to all of the unions. Well that's exactly what we're saying happens here in multi-employer. In other words it works the same both ways. There's no insistence. You apply this to the counterclaim. In this case the union is really making a rhetorical point about section two third saying it's not fair that these little railroads don't have to participate fully. But again the reason Sue Lyon and DNH don't have to join is because they have a section two third right to decide whether they want to be in the coalition. Once that decision is made then the question of whether union needs to bargain is a coastline question. It's about the history and it's about the practical appropriateness and Judge Hogan fully analyzed this decision. He said look they've been in national handling for multiple rounds out without objection and it's practically appropriate because they participate in the national plan and because it works. Union is not here telling you boy this way they they do it here with this partial participation is a disaster. We never agree. They can't say that because it does work. Did Judge Hogan get this case under some implementation of our related case rule in the district court or was it just random? There were two cases filed in in our district court that I guess they weren't really consolidated but they were kind of consolidated. You know this one that's on appeal was the second right? No your honor my reflection is that the unions filed the four separate cases in other jurisdictions. We then filed the lead case that is now on appeal here and then moved to transfer the other four cases. Those cases were all then subsequently consolidated with this case. And when you filed the case here in this court was there some sort of a notice of related case that was filed that linked this case back to the litigation in the 90s or the just coincidence Judge Hogan got? I honestly do not follow. I'd have to go back and look at the docket. I looked at the docket and I didn't see any notice of related case. If we did not file a notice of related case then it was just assigned to Judge Hogan under whatever procedures the district court used. It was not a request that the docket. Okay just curious. Unless there are any other questions? Judge Henderson? No questions thanks. All right thank you counsel. Thank you. Mr. Edelman I believe you were out of time but we'll give you two minutes. Thank you. First to your question Judge Wilkins. My recollection is the carriers did note it as a related case to the 1994 case and that's how it ended up in front of Judge Hogan. My recollection is that was the first time I was aware that you could do that with an older case and so I later did it in a subsequent case. So I'm I'm 90 percent sure that's what happened. That it was that they did note it as a related case. With respect to the Atlanta Sioux line and D&H the other point I want to make is that under the germaneness standard that's applied I can't imagine anything more germane to bargaining over health and welfare than wages. The two of a link in every round of bargaining since I've been practicing here and certainly that's more related than the work rules issues were in the Burlington Northern case. With respect to what the 8th and 6th circuits said the 8th circuit specifically looked at Atlanta coastline said it says that while section 2 first requires every reason left to make agreements the court was I'm quoting aware of no decision that construes this duty to obligate the railroad to bargain for a national agreement to a national bargaining representative. The 6th circuit said I'm quoting no court of appeals has compelled national bargaining before the start of negotiations and that to do so would fly in the piece of the statute. So both of those courts recognized that that bargaining with a national representative puts you into national bargaining and it's not just a choice of representation and as to the question Mr. Monroe raised about the Sioux and the D&H if you're in national bargaining it doesn't mean they need to sign the agreement that the carriers in the coalition are there. They are going to be a national bargaining city of the national bargaining table bargaining so they're not bound for the choices they don't have to caucus with them they don't have to make the same choices. The court doesn't have any other questions so I appreciate the extra time. Thank you and I just know for the record I asked about the related case issue. I had misread the docket there was a notice of related case that was filed I thought that it only included the other cases from the other jurisdictions but it also listed the 1994 DC district court cases. So I didn't notice that when I thank you. All right we'll take the case oh Judge Henderson did you have any questions? No questions thanks. All right thank you we'll take the case.
judges: Henderson, Wilkins, Childs